# In the United States Court of Federal Claims

No. 15-289C

(Filed Under Seal: April 16, 2015)

(Reissued for Publication: April 24, 2015) [1]

```
*****************************
                              *
CHARLES F. DAY & ASSOCIATES,  *
LLC,                          *
                              *
              Plaintiff,      *
                              *
v.                            *   Bid Protest; CICA Stay Override
                              *   Challenge; Small Business Set-
THE UNITED STATES,            *   Aside; Corrective Action; Agency
                              *   Decision to Award Competitive
              Defendant.      *   Bridge Contract; Motion to
and                           *   Dismiss; Mootness.
                              *
LOYAL SOURCE GOVERNMENT       *
SERVICES.,                    *
                              *
              Defendant-Intervenor.  *
*****************************
```

*Ralph E. Avery,* Avery Law Firm, Washington, D.C., and *John A. Tacker,* Charles F. Day & Associates, LLC, Davenport, Iowa, for Plaintiff.

*Alexander V. Sverdlov,* with whom were *Benjamin C. Mizer,* Acting Assistant Attorney General, *Robert E. Kirschman, Jr.,* and *Kirk T. Manhardt,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

*Isaias Alba, IV,* PilieroMazza, PLLC, Washington, D.C., *Patrick T. Rothwell* and *Michelle E. Littiken,* Of Counsel, for Defendant-Intervenor.

---

[1] The Court issued this opinion under seal on April 16, 2015, and gave the parties until April 23, 2015 to submit any proposed redactions of competition-sensitive, proprietary, confidential or other protected information. On April 23, 2015, Defendant informed the Court that it had no proposed redactions. Plaintiff and Defendant-Intervenor did not submit any proposed redactions. Accordingly, the decision is released for publication in its entirety.

OPINION AND ORDER

WHEELER, Judge.

In this bid protest, Plaintiff Charles F. Day & Associates, LLC ("CF Day") challenges the March 11, 2015 decision of the U.S. Army to override the automatic stay of performance under the Competition in Contracting Act ("CICA") pending the outcome of CF Day's protest before the Government Accountability Office ("GAO"). The Army awarded a contract to Defendant-Intervenor Loyal Source Government Services ("Loyal Source") on February 5, 2015 to provide field support training for M777A2 and M119A3 howitzers, including system updates, product improvements, and refresh initiatives. Administrative Record ("AR") 61. The contract resulted from the Army's small business set-aside procurement for these training services. CF Day is the incumbent contractor, and its contract expired on March 5, 2015.

On February 10, 2015, CF Day filed a size protest with the Small Business Administration ("SBA") alleging that Loyal Source is not an eligible small business because it is unduly reliant on a large business subcontractor to perform the work. On March 12, 2015, the SBA issued a decision finding that Loyal Source was not a small business on the date of award. Loyal Source has appealed SBA's decision to the SBA Office of Hearings and Appeals.

On February 23, 2015, CF Day filed a bid protest at the GAO arguing that the Army failed to follow the solicitation criteria and that Loyal Source's award should be terminated. AR 41. CF Day asserts that the Army misevaluated the offerors' past performance by improperly assessing relevance, misapplying NAICS codes, and failing to consider public information about Loyal Source's past performance. Additionally, CF Day argues that the Army misevaluated offerors' proposals under the Management/Technical factor of the solicitation. CF Day's protest is pending at the GAO, and a decision is expected within 100 days from the date of filing, not later than June 3, 2015. 31 U.S.C. § 3554(a)(1).

On March 11, 2015, General Dennis L. Via, Head of the Army's Contracting Activity, authorized an override of the automatic stay. In his determination, General Via stated:

> The timely execution of contract W15QKN-15-D-0015 plays a critical role in the Army's and Marine Corps' combat operations. The CICA stay seriously jeopardizes the ability of the Army and the Marine Corps to execute planned fieldings that substantially enhance the performance of their mission,

> and save the lives of Warfighters. Waiting for GAO's resolution of this protest would significantly increase the time within which these critically needed services would be delivered to the Warfighter. Such a delay would also result in the increased risk of injury and loss of life. Therefore, based on the findings set out in this document, it is my determination that authorization for continued performance of the contract, notwithstanding the pendency of this protest, is in the best interests of the United States.

AR 21.

CF Day filed suit in this Court on March 19, 2015 challenging the Army's stay override, and on March 23, 2015, the Court conducted a telephonic hearing on CF Day's application for a temporary restraining order ("TRO"). Upon considering the arguments of counsel, the Court entered a TRO as CF Day had requested, principally on the basis that Loyal Source is not an eligible small business. Even though the stay override determination was issued one day before the SBA's size decision, Defendant made no mention in its filings or in the TRO argument of Loyal Source's ineligibility to receive the award. Moreover, based upon the representations of Plaintiff's counsel, the Court found that the Army easily could have continued with CF Day until the GAO bid protest was decided. While acknowledging the mission-critical importance of the required field training, the Court was persuaded that CF Day could have been reinstated as the contractor until the GAO's June 3, 2015 decision date. The Court also was mindful of obtaining a prompt SBA decision on Loyal Source's size appeal. The TRO took effect on the afternoon of March 23, 2015.

On March 25, 2015, Defendant filed an Emergency Motion to Vacate the TRO, accompanied by the Declaration of Rachael Houle, a Contracting Officer for the Army Contracting Command in New Jersey. Ms. Houle made a compelling case for the need to continue with the newly awarded Loyal Source contract, and for the adverse effects of the service interruption caused by the TRO. Ms. Houle further asserted that the Army has no legal way to reinstate or re-procure the services from CF Day, and she pointed out that CF Day had not rehired any of the staff necessary to continue the field services. Since CF Day's contract expired on March 5, 2015, the Army was not able to exercise any option or to extend the contract. Under the circumstances, the Court also was mindful of the national security considerations that must be addressed under the Tucker Act: "In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the

3

action." 28 U.S.C. § 1491(b)(3).  Based upon Ms. Houle's declaration and the above provision, the Court vacated the TRO on March 26, 2015.

The posture of the case has now changed dramatically as a result of the Army's decision to stay performance of the Loyal Source contract, and to then award a competitive bridge contract to Loyal Source.  On April 8, 2015, Defendant filed a motion to dismiss Plaintiff's complaint as moot based upon the Army's voluntary corrective action.  In a supplemental declaration from the Contracting Officer, Ms. Houle explained that the Army had decided to award a competitive bridge contract to cover the period until after the GAO issues its decision on CF Day's bid protest.  Ms. Houle released a solicitation for the bridge contract on April 6, 2015.  She requested offerors to submit proposals by April 10, 2015.  The competition was limited to the three companies that submitted acceptable proposals in response to the original solicitation, and was not considered a small business set-aside.  The Army made award of the bridge contract to Loyal Source on April 15, 2015.  The scope of work is identical to the contract awarded to Loyal Source in February 2015, and the period of performance will be from May 2 until June 30, 2015, with the option to extend the contract if necessary.  Ms. Houle states that the Army intends to comply with GAO's recommendation on the protest, even if corrective action may be suggested.

Analysis

A. Standard of Review

This Court has jurisdiction under 28 U.S.C. § 1491(b) to review an agency's decision to override a CICA automatic stay.  RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1291 (Fed. Cir. 1991).  The Court reviews the agency's action under the standard of review prescribed by the Administrative Procedures Act ("APA").  The Court will reverse or modify an override decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 709 (2006).  The Supreme Court has explained the APA standard of review as follows:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  Although this inquiry into the facts is to be searching and careful, the ultimate standard of

> review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (citations omitted). The Court will find an agency's action arbitrary and capricious if (1) it relied on factors that Congress did not intend it to consider; (2) it failed to consider an important aspect of the problem; (3) it offered an explanation that is contradicted by the evidence; or (4) the explanation is so unreasonable that it could not be based on expertise or a difference in opinion. See Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983).

In Reilly's Wholesale Produce, the Court established four factors an agency should consider when making an override decision:

> (i) whether significant adverse consequences will necessarily occur if the stay is not overridden; (ii) conversely, whether reasonable alternatives to the override exist that would adequately address the circumstances presented; (iii) how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs; and (iv) the impact of the override on competition and the integrity of the procurement system, as reflected in the Competition in Contracting Act.

73 Fed. Cl. at 711 (citations omitted). The Reilly's Wholesale factors have been followed in other stay override decisions in recent years. See Beechcraft Defense Co. v. United States, 111 Fed. Cl. 24 (2013); Nortel Gov't Solutions v. United States, 84 Fed. Cl. 243 (2008); Superior Helicopter LLC v. United States, 78 Fed. Cl. 181 (2007). These factors have been applied when the stay override is based upon urgent and compelling circumstances, or based upon the best interests of the United States.

Defendant also asserts in its motion to dismiss that the Court does not have jurisdiction to decide moot cases. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 5-6. In Defendant's view, the Army's decision to take voluntary corrective action by awarding a competitive bridge contract renders CF Day's cause of action moot. Id. at 6-9. "The mootness doctrine originates from the 'case or controversy' requirement of Article III of the United States Constitution." Northrop Corp., Northrol Elecs. Sys. Div. v. United States,

27 Fed. Cl. 795, 800 n.4 (1993) (citing DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)). Even though it is an Article I tribunal, this Court applies justiciability principles of Article III, including mootness.  See, e.g., Schooling v. United States, 63 Fed. Cl. 204, 209 (2004) (dismissing case for lack of subject matter jurisdiction because claims asserted in the complaint were moot); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 558 (2000) (citing Zevalkink v. Brown, 102 F.3d 1236, 1243 (Fed. Cir. 1996)) (granting motion to dismiss for mootness); see also Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003 ("The Court of Federal Claims, though an Article I court . . . applies the same standing requirements enforced by other federal courts created under Article III.").

B. The Reasonableness of the Army's Corrective Action

Under the circumstances presented, the Army's award of a competitive bridge contract while the GAO protest is still pending is eminently reasonable.  By awarding a bridge contract for the period May 2 through June 30, 2015, with an option to extend, the Army will receive its mission-critical services through the expected GAO decision date of June 3, 2015, and for nearly one month after that date if the GAO recommends any corrective action.  Suppl. Houle Decl. ¶ 9.  Moreover, the Army should receive the decision of the SBA's Office of Hearings and Appeals within the period of the bridge contract advising whether Loyal Source is considered an eligible small business.  By not restricting the bridge contract as a small business set-aside, the Army will avoid any small business eligibility issues during the performance of the bridge contract.  Id. ¶ 8.  The Army's corrective action represents a variation from the action authorized in General Lia's March 11, 2015 stay override determination.  Indeed, the award of a competitive bridge contract did not require a stay override from the Head of the Contracting Activity.  The effect of the bridge contract is to stay performance of the Loyal Source contract being protested at the GAO.  Def.'s Mot. at 8-9.

C. Mootness

CF Day still contends it is prejudiced by the Army's failure to have provided advance notice of the contract award on February 5, 2015, which it says was in violation of FAR 15.503(a)(2).  The Court cannot identify any ten-day requirement for the advance notice, as CF Day argues, and cannot tell if the Army provided some advance notice to CF Day before awarding the contract to Loyal Source.  However, this issue is not material to the outcome of the case.  The Army's corrective action moots the question of whether the stay override should stand, and there is no case or controversy yet to be decided.  Simply stated, a stay override is not necessary for the Army to award a bridge contract, and therefore the March 11, 2015 stay override is no longer in dispute.

<u>Conclusion</u>

Accordingly, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is hereby dismissed without prejudice.  If Plaintiff wishes to file a new action in this Court based upon future events or developments relating to the subject solicitation, it should designate the new case as a related case to this one and request assignment to the undersigned judge.  The filing fee for the new case likely will be waived.

IT IS SO ORDERED.

<u>s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge